Carroll *et al. v.* Craine.

MICHAEL CARROLL *et al.,* plaintiffs in error, *v.* WILLIAM CRAINE, defendant in error.

*Error to Madison.*

Under the mechanics' lien law, the petitioner is required to prove his contract as alleged, in order to entitle him to recover. He cannot abandon, or depart from his special agreement as laid, and recover upon a *quantum meruit.*

A petitition for a mechanics' lien alleged the making of several contracts, providing for the payment of specific sums for certain labor, &c., and also, that while the work was progressing, the petitioner was employed to do certain extra work, for which he was to be paid as much as it was reasonably worth. The answer, denying one of the contracts as set up in the petition, alleged that the sum to be paid for a particular job included the extra work done. The evidence showed that the parties met for a settlement; that the petitioner made an account of his labor in a book, and that, after some conversation, he wrote something in the book, arose from his seat, throwing down the book, and said: "We will make it $1500." The witness stated that he understood it to be a final settlement of the accounts of the parties, and that they appeared to be satisfied: *Held,* that the evidence showed a final settlement.

PETITION for a mechanics' lien, filed in the Madison Circuit Court by the defendant in error against the plaintiffs in

error, and heard at the August term 1847, before the Hon. Gustavus P. Koerner, when a decree was rendered for $901·25, in favor of the petitioner, and a sale of the premises ordered to satisfy the same.

The substance of the bill, answer and evidence is stated by the Court.

*J. Gillespie, N. G. Edwards & L. Davis*, for the plaintiffs in error, relied upon the following authorities: *Green* v. *Vardiman*, 2 Blackf. 328; *Simson* v. *Hart*, 14 Johns. 63; *Hart* v. *Ten Eyck*, 2 Johns. Ch. R. 62; 7 do. 75, note; *Kimball* v. *Cook*, 1 Gilm. 423; *Garrett* v. *Stevenson*, 3 do. 261; *Loveridge* v. *Botham*, 1 Bos. & Pull. 49.

*W. Martin*, for the defendant in error, argued that the evidence sustained the allegations of the petition.

The Opinion of the Court was delivered by

CATON, J.* This petition was filed by the defendant in error to enforce a mechanics' lien for work done on the Catholic church in the city of Alton. The petition sets forth four special contracts under which it is alleged that the work was done.

It is averred that by the first, which was made in April, 1844, Craine contracted to do the carpenter's work on the church for $1000.00, which work is particularly specified in exhibit A. Craine was to commence the work immediately, and the money was to be paid him within one year from the completion.

The second contract, it is averred, was made in the spring of 1845, by which Craine agreed to put up the pews in the church, for which he was to receive $500·00, payable within one year from the time of the completion of the work.

It is further averred, that while the work under the two first contracts was in progress, Craine was employed to do cer-

---

*WILSON, C. J. did not sit in this case.

tain extra work upon the church, which amounted to $721·26, for which he was to be paid what it was reasonably worth, within one year after the said work should be completed.

Fourth, that Craine superintended the building, and made the plans of the church, commencing in April, 1844, for which it was agreed he should receive as much as it was reasonably worth, which was to be paid in one year after the completion of the church, and that said services were worth $400·00.

The petition further avers, that the work done under the three first contracts, was completed on the 14th July, 1845. It is further averred, that the work was done according to the several contracts, and that no part of the money due him therefor has been paid, and concludes with the usual prayer.

The only answer which is necessary to notice, is that of Carroll, which admits the making of the first contract substantially as alleged in the petition, except the time of payment, for which no particular time was agreed upon, but that the money was to be paid as he could pay it, after the work was done.

The answer denies the making of the second contract, as alleged, but admits that he made a contract with Craine in the spring of 1845, for the putting up of the pews in the church, but denies that he was to receive $500·00, for putting up the pews alone, but that it was agreed between the parties, that Craine was to have $500·00 for putting up the pews and extra work and jobs, not included in the $1000·00 contract.

The answer denies the making of any other contract with Craine, and that he was never employed to do any other work on the church of any kind, and all that he did was included in the two aforesaid contracts, for the doing of which he was to receive $1500·00 and no more. Of this, the answer avers, that he has been paid the sum of $1055·96½, leaving still due him, the sum of $444·03½.

The answer further avers, that in July, 1845, after the work was completed, the said Carroll and Craine had had an

accounting and settlement together, for the said work and services done and rendered by said Craine on and about said church, when Carroll requested Craine to enter his account in his own handwriting upon the church account book kept by Carroll, whereupon he entered on said book the following: "William Craine's account with church, per first

contract                                                        $1,000

extra, pews, seats, &c.                                          500;"

that Craine never set up, or pretended to have any other claim or demand for said work and services till the commencement of this suit.

A replication was filed and the cause was tried by the Court without a jury, who found for the petitioner, and rendered a decree for $901·25, to reverse or modify which, this writ of error is prosecuted.

As it was agreed by the counsel here, that the defendant in error has been paid the sum of $1055·96½, and as the plaintiffs' counsel have consented that the decree shall be affirmed for $444·03½, the amount admitted by Carroll's answer to be due to Craine, under the contracts which it is admitted were made; we are relieved from the necessity of examining the record any further than to ascertain whether the petitioner can recover any more than that amount, to prevent which, the plaintiff's counsel insist upon all their legal rights.

The answer denies in positive and unqualified terms the making of the two last contracts, under which this excess is claimed, and we have sought in vain, among the evidence sent up, for any proof to establish them.

By the law under which this proceeding was instituted, the petitioner is bound to prove his contracts as laid in order to entitle him to recover. He cannot abandon or depart from his special agreements as laid, and go as upon a *quantum meruit. Kimball* v. *Cook,* 1 Gilm. 423. This seems to be an insuperable bar against his recovering more than for the work done under the contracts as laid and proved, no matter how much the evidence may show him to be justly entitled to for other work. It is most probable, that in the

Court below, the contest was upon the amount actually due for the work done, without adverting to the state of the proof in relation to the contracts, and that had the attention of the Court been directed to that subject, there would have been no occasion for prosecuting this writ of error. As the record stands, (and by that alone must we decide this as all other cases,) there is no possible way of making out a case for the petitioner, for more than the amount admitted to be due by the answer.

Although there can be but little doubt that Craine, from a change of plans and style of work, did a considerable more than was contemplated at the time of the making of the second contract in the spring of 1845, yet we are inclined to the opinion that he is concluded by the settlement made with Carroll, about the time of the completion of the work.

The witness, Buck, states that some week or two after the dedication of the church, and after the work had all been done upon the church, except putting up the bell-frame, which the hands were doing at the time, Craine and Carroll were in the room of the latter; that they commenced to settle accounts between nine and ten o'clock in the morning; that Craine did all the writing on that occasion. They first spoke of the board, and that after being engaged some time, they spoke of the $1000 contract; and after that, one of the parties said: "What about the pews?" When, as witness thought, Carroll said, "they were to be $400. We have not spoken of them since we were on board the steamboat, but I want you to do what is right between yourself and the church. I have no personal interest in the matter." Carroll stood in a maze, by which the witness afterwards states, he means he was standing or musing, and then wrote upon the book, and got up and threw down the book, and said, "we will make it $1500;" when both parties went to dinner, and did not again return to the room. The witness says he understood it to be a final settlement of their accounts. The parties seemed to be satisfied, and on good terms all the time.

This account book was produced on the trial. On the left hand side of one of the pages, is an account of payments

amounting to $1055·96½, and opposite to which on the right
hand side of the page, admitted to be in the handwriting of
Craine, is written:

"William Craine's account with church, per first
     contract                               $1000,00

extra, pews, seats, &c.                    500,00."

This is all of the evidence on the subject of that settlement,
and although the other evidence in the case shows that the
work done by Craine, not included in the first contract, was
worth a very considerable more than $500, or allowing $500
for the pews, (and one Bremen says that he once heard Car-
roll say that he was to give $500 for making the pews, but
cannot tell at what time,) the work beside them, amounted to
a considerable sum.  We are much inclined to the opinion,
that this evidence, all taken together, shows that the parties
at that time, agreed that Craine should be allowed $1500 for
the work done under the first contract, and for the extra
work, pews, seats, &c., including all the work that he had
done on the church.  We may well believe that there was a
misunderstanding between the parties, as to the nature and
extent of the second contract.  It was never reduced to wri-
ting in form, but rather existed in loose conversations, and
tacit understandings, each probably reposing great confi-
dence in the other, and neither anticipating any difficulty.
That the plan of the building was materially changed after
the spring of 1845, the proof clearly establishes, yet it is
altogether probable that nothing was said between the par-
ties on the subject of the additional expense, Carroll not an-
ticipating that the expense would be very much increased,
and Craine expecting that Carroll would be willing to allow
him what was right.  In this state of feeling the parties met,
at the time of the settlement spoken of, while their friend-
ship still subsisted, and their mutual confidence in each
other remained unimpaired; and in that state of feeling,
Craine determined, rather than to have a misunderstanding
with the Priest, to sacrifice the additional amount that he
supposed himself entitled to, this feeling being undoubtedly
promoted by the generous appeal made by Carroll, when he

said, "I want you to do what is right between yourself and the church—I have no personal interest in the matter." Under these influences and sentiments he consented to take $1500 for his work on the church. Upon subsequent reflection, and after making a clear estimate of the increased expense, occasioned by the change of plans, he became dissatisfied with the amount thus agreed upon, and thought he was justly entitled to more, and persuaded himself that he ought not to be bound by that arrangement. This, undoubtedly, led to the subsequent difficulty and the institution of this suit.

Upon the whole record, we are of opinion that the decree will have to be modified so as to allow the petitioner his lien upon the church for $444·03½, with interest thereon from the fourteenth day of July, 1845, together with his costs in the Court below, and that each party pay one half of the costs of this writ of error.

*Decree modified.*